LATHAM & WATKINS LLP
BLAKE R. DAVIS, Bar No. 294360
blake.davis@lw.com
ALLISON HARMS, Bar No. 299214
allison.harms@lw.com
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone:    (415) 391-0600

DREW W. ROBERTS, Bar No. 337164
drew.roberts@lw.com
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Telephone:    (202) 637-2200

*Attorneys for Plaintiff Juries.ai, Inc.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| JURIES.AI, INC.<br><br>            *Plaintiff,*<br><br>    v.<br><br>VINCENT SHEU<br><br>            *Defendant.* | Case No. 25-cv-10188<br><br>**PLAINTIFF JURIES.AI, INC.'S COMPLAINT**<br><br>**(1) Violation of the Defend Trade Secrets Act (18 U.S.C. § 1836 *et seq.*)**<br><br>**(2) Violation of the California Uniform Trade Secrets Act (Cal. Civ. Code § 3426 *et seq.*)**<br><br>**(3) Breach of Contract**<br><br>**(4) Violation of the California Comprehensive Computer Data Access and Fraud Act (Cal. Pen. Code § 502)**<br><br>**(5) Conversion**<br><br>**JURY TRIAL DEMANDED** |

# COMPLAINT

Plaintiff Juries.ai, Inc. ("Juries.ai," "Company," or "Plaintiff") files this complaint against Defendant Mr. Vincent Sheu ("Mr. Sheu" or "Defendant") as follows:

## NATURE OF THE ACTION

1. Juries.ai brings this action to stop Vincent Sheu, a co-founder and former Juries.ai employee, from misappropriating and exploiting Juries.ai's trade secrets, interfering with Juries.ai's business and investor relationships, and his unlawful retention and refusal to return Company property.

## THE PARTIES

2. Plaintiff Juries.ai is a C corporation organized under the laws of the State of Delaware. Its principal place of business is at 131 7th Avenue, #209, New York, NY, and has been in operation since April 2025.

3. Defendant Vincent Sheu is a former employee of Juries.ai. He is a resident, domiciliary, and citizen of California. On information and belief, Mr. Sheu resides in Saratoga, California. Mr. Sheu worked for Juries.ai for approximately six months, beginning in or around April 2025 until he was terminated on October 31, 2025.

## JURISDICTION AND VENUE

4. This Court has original jurisdiction over this action pursuant to the Defend Trade Secrets Act, 18 U.S.C. § 1836 and 28 U.S.C. § 1331.

5. This Court has supplemental jurisdiction over the other claims asserted herein pursuant to 28 U.S.C. § 1367.

6. This Court has personal jurisdiction over Defendant by virtue of his residence and activities in this forum. In addition, this Court has personal jurisdiction over Defendant by reason of his consent to the jurisdiction of this Court pursuant to Section 10.1 of Mr. Sheu's Employee Confidential Information and Inventions Assignment Agreement.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant resides in Saratoga, California, which is located in the Northern District of California.

8. Venue is also proper because a substantial part of the events or omissions giving

rise to the claims pled herein occurred in the Northern District of California and a substantial part of the property that is the subject of the claims is situated in the Northern District of California. Specifically, the misappropriated trade secret and confidential information were accessed, viewed, and downloaded by Defendant in the Northern District of California. Juries.ai is informed and believes that its trade secret and confidential information resides in the Northern District of California on, at minimum, computers in Mr. Sheu's possession.

9. In addition, venue is proper by reason of Defendant's consent to the jurisdiction of this Court pursuant to Section 10.1 of Mr. Sheu's Employee Confidential Information and Inventions Assignment Agreement.

## DIVISIONAL ASSIGNMENT

10. Pursuant to Civil Local Rule 3-2(e), this action is to be assigned to the San Jose Division.

## BACKGROUND

### Juries.ai

11. Juries.ai, Inc. was founded in April 2025 and is an innovative pioneer in the field of artificial intelligence powered solutions for courtroom simulation. In particular, Juries.ai has developed an artificial intelligence platform that can simulate real courtroom decision-makers, allowing litigation teams a private way to battle-test their case before it matters most. Juries.ai has hired employees and contractors in California and New York. The Juries.ai platform is intended for use in interstate commerce, including for clients and legal disputes located throughout the country.

12. Juries.ai maintains many aspects of its AI-powered platform as confidential to protect the substantial investment the Company has made to develop it and to protect its competitive advantages in the marketplace. This confidential information includes trade secrets that Juries.ai owns, including a comprehensive intake methodology for collecting data from real-world potential jurors, actual data collected from over 80 individuals through this intake methodology, data pre-processing methodologies to enable AI agent utilization of the data collected from real-world jurors, methodologies for validating the fidelity of simulated jurors to

real-world jury pool members, and proprietary source code for simulating jurors and courtroom decision makers from this collected data.

13. Mr. Sheu's CIIAAs, discussed below, provide further examples of information that Juries.ai considers to be proprietary and trade secret, including information regarding research, development, new products, business and operational plans, budgets, unpublished financial statements and projections, costs, margins, discounts, credit terms, pricing, quoting procedures, future plans and strategies, capital-raising plans, internal services, suppliers and supplier information, among others.

14. Juries.ai has spent hundreds of thousands of dollars developing this confidential information. This confidential information derives considerable value from not being publicly known outside of Juries.ai, because it represents a significant investment of time and money that provides Juries.ai competitive advantages, among other things, from both a technological and business perspective. Juries.ai has released its platform to limited, prospective business-to-business customers with signed non-disclosure agreements with Juries.ai. Juries.ai anticipates that its innovative technology will gain Juries.ai an important first-mover advantage and tens of millions of dollars in revenues.

15. Juries.ai has acted reasonably and diligently to protect the secrecy of its trade secret and confidential information related to its AI-powered courtroom technology, especially for simulating real-world courtroom decision makers, including by the following measures:

- Requiring employees to execute Confidential Information and Inventions Assignment Agreements, which includes confidentiality, non-disclosure, and return of property obligations;

- Requiring consultants and contractors to sign confidentiality and non-disclosure agreements;

- Requiring individuals to sign non-disclosure agreements and information release forms before being interviewed pursuant to Juries.ai's intake methodology;

- Using a company Google Workspace for storing confidential information, which includes a combination of built-in threat prevention, advanced security controls, and administrative visibility for data loss prevention;

- Using a private GitHub repository for source code development that allows permission assignments;

- Granting permission rights to the GitHub repository in a restrictive fashion;
- Maintaining high password and technical standards for access and security to the Google Workspace and GitHub repository;
- Requiring that employees reaffirm their confidentiality, non-disclosure, and return of property obligations upon termination of employment through execution of a Termination of Employment letter, which reiterates one's continuing confidentiality obligations and seeks affirmative representation that no company documents are retained.

### Mr. Sheu's Employment

16. Mr. Sheu was a co-founder of Juries.ai that reported directly to Juries.ai's CEO. Mr. Sheu was responsible for providing technical input and overseeing development of Juries.ai's product development. Due to his role as co-founder, Mr. Sheu had access to all of Juries.ai's source code and document repositories, as well as administrative control over several systems owned by Juries.ai. For example, Mr. Sheu was the super administrator of Juries.ai's Google Workspace, JustWorks account, the system Juries.ai uses for company payroll services, Brex account, the digital banking system in which Juries.ai stored significant funds in excess of $400,000, and Carta account, which Juries.ai uses for employee equity and capitalization table management. Mr. Sheu also controlled an Amazon Web Services ("AWS") account for Juries.ai, containing over $190,000 worth of credits awarded to Juries.ai.

17. On April 3, 2025, Mr. Sheu signed an Employee Confidential Information and Inventions Assignment Agreement ("April CIIAA," attached hereto as Exhibit A) with Juries.ai LLC.[1] On October 10, 2025, Mr. Sheu also signed a substantively identical Employee Confidential Information and Inventions Assignment Agreement with Juries.ai Inc ("October CIIAA," attached hereto as Exhibit B[2]) (collectively, the April CIIAA and October CIIAA the "Confidentiality Agreements").

18. The Confidentiality Agreements provide that:

---

[1] Juries.ai, LLC was converted into Juries.ai, Inc. in October 2025. Pursuant to a Plan of Conversion, Juries.ai, LLC and Juries.ai, Inc are deemed to be the same entity, and all assets and property (real, personal and mixed) and all debts due to Juries.ai, LLC, as well as all other things and causes of action belonging to Juries.ai, LLC, remain vested in Juries.ai, Inc. and shall be the property of Juries.ai, Inc.

[2] The October CIIAA supersedes the April CIIAA prospectively. *See* October CIIAA §12.10.

> [Mr. Sheu] will hold in confidence and will not disclose, use, lecture upon, or publish any Confidential Information, except as required in connection with my work for Company … [and] that Company information or documentation to which I have access during my employment, regardless of whether it contains Confidential Information, is the property of Company and cannot be downloaded or retained for my personal use or for any use that is outside the scope of my duties for Company.

October CIIAA § 1.1; *see also* April CIIAA § 1.

19. The Confidentiality Agreements defines Confidential Information as follows:

> any and all confidential knowledge or data of Company, and includes any confidential knowledge or data that Company has received, or receives in the future, from third parties that Company has agreed to treat as confidential and to use for only certain limited purposes. By way of illustration but not limitation, Confidential Information includes (a) trade secrets, inventions, ideas, processes, formulas, software in source or object code, works of authorship, data, technology, know-how, designs and techniques, and any other work product of any nature, and all Intellectual Property Rights (defined below) in all of the foregoing (collectively, "Inventions"), including all Company Inventions (defined in Section 2.1); (b) information regarding research, development, new products, business and operational plans, budgets, unpublished financial statements and projections, costs, margins, discounts, credit terms, pricing, quoting procedures, future plans and strategies, capital-raising plans, internal services, suppliers and supplier information; (c) information about customers and potential customers of Company, including customer lists, names, representatives, their needs or desires with respect to the types of products or services offered by Company, and other non-public information; (d) information about Company's business partners and their services, including names, representatives, proposals, bids, contracts, and the products and services they provide; (e) information regarding personnel, employee lists, compensation, and employee skills; and (f) any other non-public information that a competitor of Company could use to Company's competitive disadvantage.

October CIIAA § 1.2; *see also* April CIIAA § 2.

20. The Confidentiality Agreements also provide that, upon ceasing to being employed by Juries.ai:

> [Mr. Sheu] will deliver to Company any and all materials, together with all copies thereof, containing or disclosing any Company Inventions, or Confidential Information. I will not copy, delete, or alter any information contained upon my Company computer or Company equipment before I return it to Company. In addition, if I have used any personal computer, server, or e-mail system to receive, store, review, prepare or transmit any Company information, including but not limited to, Confidential Information, I agree to provide Company with a computer-useable copy of all

such information and then permanently delete such information from those systems; and I agree to provide Company access to my system as reasonably requested to verify that the necessary copying and/or deletion is completed.

October CIIAA § 8; *see also* April CIIAA § 7.

21. The Confidentiality Agreements also require that "prior to leaving," Mr. Sheu:

provide Company any and all information needed to access any Company property or information returned or required to be returned pursuant to this paragraph, including without limitation any login, password, and account information; cooperate with Company in attending an exit interview; and complete and sign Company's termination statement if required to do so by Company.

October CIIAA § 8; *see also* April CIIAA § 7.

22. Mr. Sheu's Confidentiality Agreements confirmed that Mr. Sheu was an at-will employee, and that Mr. Sheu's employment could be terminated at any time, with or without cause or advance notice. *See* October CIIAA § 12.5; April CIIAA § 10.5.

23. The Confidentiality Agreements also required Mr. Sheu to:

assign to Employer all my right, title, and interest in and to any and all Company Inventions other than Nonassignable Inventions and agree that such assignment includes an assignment of all Moral Rights.

October CIIAA § 2.4; *see also* April CIIAA § 2.4.

24. Mr. Sheu agreed in the Confidential Agreements to:

will assist Company, in every way Company requests, including signing, verifying and delivering any documents and performing any other acts, to obtain and enforce United States and foreign Intellectual Property Rights and Moral Rights relating to Company Inventions in any jurisdictions in the world. My obligation to assist Company with respect to Intellectual Property Rights relating to Company Inventions will continue beyond the termination of my employment, but Company will compensate me at a reasonable rate after such termination for the time I actually spend on such assistance. If Company is unable for any reason, after reasonable effort, to secure my signature on any document needed in connection with the actions specified in this paragraph, I hereby irrevocably designate and appoint Employer and its duly authorized officers and agents as my agent and attorney in fact, which appointment is coupled with an interest, to act for and on my behalf to execute, verify and file any such documents and to do all other lawfully permitted acts to further the purposes of this Agreement with the same legal force and effect as if executed by me. I hereby waive and quitclaim to Company any and all claims, of any nature whatsoever, which I now or may hereafter have for infringement of

any Intellectual Property Rights assigned to Employer under this Agreement.

October CIIAA § 2.8; *see also* April CIIAA § 2.8.

**Mr. Sheu's Termination and Bad Faith Post-Termination Conduct**

25. Although Mr. Sheu presented himself as an AI expert capable of building the Juries.ai platform, he did not significantly contribute to the advancement of Juries.ai's product.

26. On October 31, 2025, Juries.ai provided Mr. Sheu with written notice that his employment was being terminated, effective immediately. Juries.ai lawfully terminated Mr. Sheu pursuant to the terms of the CIIAA and corporate bylaws. Upon termination, Juries.ai exercised its right to repurchase Mr. Sheu's Common Stock pursuant to the Stock Restriction Agreement between Mr. Sheu and the company dated October 13, 2025, and tendered payment to Mr. Sheu electronically.

27. Juries.ai provided Mr. Sheu with a Termination Letter (attached hereto as Exhibit C) that outlined his separation from service with Juries.ai, and reminded Mr. Sheu of his continuing confidentiality, non-disclosure, and other obligations in the Confidentiality Agreements. The Termination Letter also requested that Mr. Sheu, within five days of October 31, 2025, return to the company:

> all Company documents (and all copies thereof) and other Company property in your possession or control, including, but not limited to, Company files, notes, drawings, records, plans, forecasts, reports, studies, analyses, proposals, agreements, drafts, financial and operational information, research and development information, sales and marketing information, customer lists, prospect information, pipeline reports, sales reports, personnel information, specifications, code, software, databases, computer-recorded information, tangible property and equipment (including, but not limited to, computing and electronic devices, mobile telephones, servers), credit cards, entry cards, identification badges and keys; and any materials of any kind which contain or embody any proprietary or confidential information of the Company (and all reproductions or embodiments thereof in whole or in part). You must make a diligent search to locate any such documents, property and information by the close of business on the Separation Date or as soon as possible thereafter.

28. The Termination Letter requested that Mr. Sheu sign the Termination Letter acknowledging he received and understood it.

29. Since his termination, Mr. Sheu has refused to sign the Termination Letter, despite his obligation to do so under Section 7 of the Confidentiality Agreements, or comply with any of its confidentiality, non-disclosure, and return of property requirements.

30. Mr. Sheu has not returned any Company documents or other Company property, and has not complied with his obligations under the Confidentiality Agreements.

31. Instead, since his termination, Mr. Sheu has willfully and directly violated the terms of the Confidentiality Agreements, and has taken actions in bad faith designed to directly harm Juries.ai's continued operations.

32. Following his termination, Mr. Sheu restricted Juries.ai's access to the JustWorks account that Juries.ai owns and uses for company payroll services, hindering Juries.ai's day-to-day operations and payroll systems.

33. Following his termination, Mr. Sheu also restricted Juries.ai's access to its Brex digital banking account, hindering Juries.ai's day-to-day operations and access to its funds.

34. Mr. Sheu has not returned the Brex account to Juries.ai.

35. Following his termination, Mr. Sheu restricted Juries.ai's access to Carta, a service Juries.ai uses for its capitalization table and employee equity management.

36. Mr. Sheu has not restored Juries.ai's access to Carta.

37. Following his termination, Mr. Sheu has refused to grant administrative control to Juries.ai's AWS credits totaling over $190,000 in an AWS account controlled by him.

38. Following his termination, Mr. Sheu has also refused to provide Juries.ai access to its administrative account for Slack.

39. Juries.ai performed an investigation into its Google Workspace logs, which show Mr. Sheu unlawfully accessing Juries.ai's confidential internal repositories where Juries.ai's proprietary information and know-how is stored in over 80 separate instances without authorization.

40. Juries.ai was able to successfully terminate Mr. Sheu's access to its GitHub source code repository on October 31, 2025. On information and belief, Mr. Sheu continues to be in possession of Juries.ai's source code, comprising the vast majority of the company's code base,

on his personal devices which he used for business operations.

41. Mr. Sheu has not returned any Juries.ai source code to Juries.ai.

42. In addition to the foregoing, Mr. Sheu also possesses information regarding Juries.ai's business and operational plans, budgets, potential customer lists, pricing, quoting procedures, future plans and strategies, and capital-raising plans.

43. Mr. Sheu has not returned information regarding Juries.ai's business and operational plans, budgets, potential customer lists, pricing, quoting procedures, future plans and strategies, and capital-raising plans to Juries.ai.

44. On information and belief, Mr. Sheu is using, or intends to use, Juries.ai's trade secret and confidential information to unlawfully compete with Juries.ai, and to interfere with Juries.ai's potential customers and investors.

45. Following his termination, Mr. Sheu interfered with Juries.ai's filing of intellectual property. During Mr. Sheu's employment, Juries.ai worked with outside counsel to draft a complete patent application on inventions developed and owned by Juries.ai, naming six inventors, which was ready to file. Mr. Sheu expressly agreed in the October CIIAA "to assist Company with respect to Intellectual Property Rights relating to Company Inventions" and that obligation "will continue beyond the termination of my employment." *See* October CIIAA §§ 2.1 (defining "Intellectual Property Rights" and "Company Inventions"), 2.4 ("Assignment of Company Inventions."), 2.8 ("Enforcement of Intellectual Property Rights and Assistance" including "My obligation to assist Company with respect to Intellectual Property Rights relating to Company Inventions will continue beyond the termination of my employment"). Despite these legal obligations, Mr. Sheu contacted Juries.ai's outside counsel and, on information and belief, instructed them not to file the application. Outside counsel then informed Juries.ai that it would be unable to file the application due to conflicts.

46. Mr. Sheu's actions to interfere with the filing of Juries.ai's patent application were in violation of his legal obligations to assign and enforce the intellectual property belonging to Juries.ai.

47. Juries.ai has at all times acted diligently in attempting to protect its intellectual

property and resolve its dispute with Mr. Sheu without court intervention.

48. On November 7, one week after sending Mr. Sheu his Termination Notice, Juries.ai's CEO had a telephone conference with Mr. Sheu in an attempt to resolve this dispute and to request Mr. Sheu comply with his continued obligations to the company. On that call, Mr. Sheu refused to address his termination and obligations. Instead, Mr. Sheu repeatedly suggested that Juries.ai should be dissolved. Mr. Sheu also attempted to solicit Juries.ai's intended business plan and roadmap to attracting additional venture funding.

49. On November 12, Juries.ai again had a call with Mr. Sheu to request that he comply with his return of property obligations. During that call, Mr. Sheu again reiterated his belief that Juries.ai should be shut down, without explanation. Mr. Sheu did not commit to return any of Juries.ai's property, accounts, or to comply with any of his confidentiality, non-disclosure, and return of property obligations.

50. On information and belief, Sheu had by this time formulated an intent to misappropriate company IP in the creation of a new, substantially identical business. During the weeks following his termination, on information and belief, Mr. Sheu approached multiple investors that he knew Juries.ai was actively discussing an investment round with, and Mr. Sheu pitched them on a substantially identical product and company to Juries.ai.

51. Mr. Sheu's post-termination behavior has caused Juries.ai to legitimately fear that Mr. Sheu will use, or already has used, and/or disclose Juries.ai's trade secret and confidential information to his benefit or the benefit of Juries.ai's competitors. Having failed to comply with his legal obligations voluntarily, Mr. Sheu has forced Juries.ai to seek the Court's intervention.

## FIRST CLAIM FOR RELIEF

**Violation of the Defend Trade Secrets Act (18 U.S.C. § 1836 *et seq.*)**

52. Juries.ai re-alleges and incorporates by reference the allegations in paragraph 1 through 50 as though fully set forth here.

53. Juries.ai's trade secret and confidential information relates to products or services used intended for use in interstate or foreign commerce.

54. Juries.ai's trade secret and confidential information, including as described above

in paragraphs 11-13, constitutes "trade secrets" within the meaning of 18 U.S.C. § 1839(3).

55. The above detailed trade secret and confidential information that Mr. Sheu accessed and is believed to have downloaded derives independent economic value, both actual and potential, from not being generally known to and not being readily ascertainable through proper means by Juries.ai's competitors or to other persons or entities who might obtain economic value from its disclosure or use.

56. At all times relevant herein, Juries.ai has taken the above-described reasonable measures to protect the secrecy of its trade secret and confidential information, including that which Mr. Sheu has misappropriated.

57. Mr. Sheu's actions, as set forth herein, constitute "misappropriation" within the meaning of 18 U.S.C. § 1839(5).

58. Mr. Sheu post-termination access, possession, and use of Juries.ai's trade secret and confidential information is without Juries.ai's express or implied consent, and in breach of Mr. Sheu's duty to maintain secrecy and return Company information.

59. Mr. Sheu knew or had reason to know at the time he accessed, downloaded, or used Juries.ai's trade secret and confidential information that this information was acquired and maintained by improper means and/or under circumstances giving rise to a duty to maintain secrecy or limit use.

60. Mr. Sheu has failed to return to Juries.ai the trade secret and confidential information that he misappropriated.

61. Upon information and belief, Mr. Sheu is retaining and using Juries.ai's trade secret and confidential information to compete with and/or otherwise harm Juries.ai.

62. Mr. Sheu's misappropriation has proximately caused damages to Juries.ai, including but not limited to loss of profits, goodwill, competitive advantage, and business opportunities.

63. Mr. Sheu has been unjustly enriched as a further proximate result of his misappropriation of Juries.ai's trade secret and confidential information.

64. Mr. Sheu's actions in misappropriating Juries.ai's trade secret and confidential

information was willful, fraudulent, malicious, and was done with the intent to injure and oppress Juries.ai and improve Mr. Sheu's own economic opportunities, thereby justifying an award of punitive damages against Mr. Sheu pursuant to 18 U.S.C. § 1836(b)(3)(C) and attorneys' fees pursuant to 18 U.S.C. § 1836(b)(3)(D).

65.  On information and belief, if Mr. Sheu's conduct is not enjoined, he will continue to misappropriate, disclose, and use for his own benefit and to Juries.ai's detriment Juries.ai's trade secret information.

66.  Because Juries.ai's remedy at law is inadequate, Juries.ai also seeks temporary, preliminary, and permanent injunctive relief to recover and protect its confidential, proprietary, and trade secret information and other legitimate business interests. Injunctive relief is necessary to eliminate the commercial advantage that otherwise would be derived from Mr. Sheu's continued misappropriation of Juries.ai's trade secret information.

## SECOND CLAIM FOR RELIEF

**Violation of the California Uniform Trade Secrets Act (Cal. Civ. Code § 3426 *et seq.*)**

67.  Juries.ai re-alleges and incorporates by reference the allegations in paragraph 1 through 65 as though fully set forth here.

68.  Juries.ai's trade secret and confidential information, as described above in paragraph 11-13, constitutes "trade secrets" within the meaning of Cal. Civ. Code § 3426.1.

69.  The above detailed trade secret and confidential information that Mr. Sheu accessed, possesses, and used derives independent economic value, both actual and potential, from not being generally known to and not being readily ascertainable through proper means by Juries.ai's competitors or to other persons or entities who might obtain economic value from its disclosure or use.

70.  At all times relevant herein, Juries.ai has taken the above-described reasonable measures to protect the secrecy of its trade secret and confidential information, including that which Mr. Sheu has misappropriated.

71.  Mr. Sheu's actions, as set forth herein, constitute "misappropriation" within the meaning of Cal. Civil Code § 3426.1.

72. Mr. Sheu post-termination access, possession, and use of Juries.ai's trade secret and confidential information is without Juries.ai's express or implied consent, and in breach of Mr. Sheu's duty to maintain secrecy and return Company information.

73. Mr. Sheu knew or had reason to know at the time he accessed, downloaded, or used Juries.ai's trade secret and confidential information that this information was acquired and maintained by improper means and/or under circumstances giving rise to a duty to maintain secrecy or limit use.

74. Mr. Sheu has failed to return to Juries.ai the trade secret and confidential information that he misappropriated.

75. Upon information and belief, Mr. Sheu is retaining and using Juries.ai's trade secret and confidential information to compete with and/or otherwise harm Juries.ai.

76. Mr. Sheu's misappropriation has proximately caused damages to Juries.ai, including but not limited to loss of profits, goodwill, competitive advantage, and business opportunities.

77. Mr. Sheu has been unjustly enriched as a further proximate result of his misappropriation of Juries.ai's trade secret and confidential information.

78. Mr. Sheu's actions in misappropriating Juries.ai's trade secret and confidential information was willful, fraudulent, malicious, and was done with the intent to injure and oppress Juries.ai and improve Mr. Sheu's own economic opportunities, thereby justifying an award of punitive damages against Mr. Sheu pursuant to Cal. Civil Code section 3426.3(c) and attorneys' fees pursuant to Cal. Civ. Code § 3426.4.

79. On information and belief, if Mr. Sheu's conduct is not enjoined, he will continue to misappropriate, disclose, and use for his own benefit and to Juries.ai's detriment Juries.ai's trade secret information.

80. Because Juries.ai's remedy at law is inadequate, Juries.ai also seeks temporary, preliminary, and permanent injunctive relief to recover and protect its confidential, proprietary, and trade secret information and other legitimate business interests. Injunctive relief is necessary to eliminate the commercial advantage that otherwise would be derived from Mr. Sheu's continued

misappropriation of Juries.ai's trade secret information.

## THIRD CLAIM FOR RELIEF

### Breach of Contract

81. Juries.ai re-alleges and incorporates by reference the allegations in paragraph 1 through 79 as though fully set forth here.

82. Mr. Sheu, as part of his employment, agreed to the terms of and signed the October CIIAA, requiring him to "deliver to Company any and all materials, together with all copies thereof, containing or disclosing any Company Inventions, or Confidential Information," "provide Company with a computer-useable copy of all such information and then permanently delete such information from [personal] systems," "provide Company any and all information needed to access any Company property or information returned or required to be returned pursuant to this paragraph, including without limitation any login, password, and account information," and "assist Company, in every way Company requests, including signing, verifying and delivering any documents and performing any other acts, to obtain and enforce United States and foreign Intellectual Property Rights." October CIIAA §§ 8, 2.8.

83. Likewise, Mr. Sheu, as part of his employment, agreed to the terms of and signed the April CIIAA, requiring him to "to "deliver to Company any and all materials, together with all copies thereof, containing or disclosing any Company Inventions, or Confidential Information," "provide Company with a computer-useable copy of all such information and then permanently delete such information from [personal] systems," "provide Company any and all information needed to access any Company property or information returned or required to be returned pursuant to this paragraph, including without limitation any login, password, and account information," and "assist Company, in every way Company requests, including signing, verifying and delivering any documents and performing any other acts, to obtain and enforce United States and foreign Intellectual Property Rights." April CIIAA §§ 7, 2.8.

84. Mr. Sheu breached his Confidentiality Agreements, including both the October CIIAA and April CIIAA, through his actions described above, including Mr. Sheu's refusal to return the property of Juries.ai at the termination of his employment, restricting Juries.ai's access

to its property, and preventing Juries.ai from filing a patent application to protect its intellectual property.

85. Juries.ai complied with and fulfilled its obligations under both the October CIIAA and April CIIAA, which are lawful and binding upon the parties.

86. As a direct and proximate result of Mr. Sheu's breach, Juries.ai has sustained and will continue to sustain damages.

87. Juries.ai is also entitled to temporary, preliminary, and permanent injunctive relief requiring specific performance of both the October CIIAA and April CIIAA. In each agreement, Mr. Sheu expressly agreed that injunction relief is appropriate for threatened or actual violations. Specifically, Mr. Sheu agreed "(b) any threatened or actual violation of this Agreement or any of its terms will constitute immediate and irreparable injury to Company, and (c) Company will have the right to enforce this Agreement by injunction, specific performance or other equitable relief, without bond and without prejudice to any other rights and remedies that Company may have for a breach or threatened breach of this Agreement." October CIIAA § 9; April CIIAA § 8.

## FOURTH CLAIM FOR RELIEF

**Violation of the California Comprehensive Computer Data Access and Fraud Act**

**(Cal. Pen. Code § 502)**

88. Juries.ai re-alleges and incorporates by reference the allegations in paragraph 1 through 86 as though fully set forth here.

89. Mr. Sheu's conduct, as alleged herein, violated Cal. Pen. Code § 502(c).

90. Mr. Sheu knowingly accessed and without permission took, copied, or made use of Juries.ai's data and supporting documentation from a computer, computer system, or computer network.

91. Mr. Sheu knowingly and without permission used Juries.ai's data, computer, computer system, and/or computer network, wrongfully to control or obtain trade secret and confidential information and data.

92. Mr. Sheu knowingly and without permission accessed or caused to be accessed Juries.ai's computer, computer system, or computer network.

93. Mr. Sheu's conduct, as alleged herein, proximately caused damages to Juries.ai, including but not limited to loss of profits, goodwill, competitive advantage, and business opportunities.

94. Mr. Sheu's conduct, as alleged herein, was willful, fraudulent, malicious, and was done with the intent to injure and oppress Juries.ai and improve Mr. Sheu's own economic opportunities, thereby justifying an award of punitive damages against Mr. Sheu.

### FIFTH CLAIM FOR RELIEF

#### Conversion

95. Juries.ai re-alleges and incorporates by reference the allegations in paragraph 1 through 93 as though fully set forth here.

96. Juries.ai owned the trade secret and confidential information, including its source code, proprietary know-how, and methodology, when Mr. Sheu was given notice of his termination as an employee of Juries.ai on October 31, 2025.

97. As the owner of confidential, proprietary, and/or trade secret information regarding technical, pricing, and sales information for the Juries.ai platform, Juries.ai has a property interest in its trade secrets.

98. On information and belief, Mr. Sheu intentionally interfered with Juries.ai's property interest in its trade secrets by misappropriating them and using them without Juries.ai's authorization.

99. Juries.ai also owned its accounts for online services including JustWorks, Brex, Carta, and AWS at the time of Mr. Sheu's termination.

100. Following his termination, Mr. Sheu made JustWorks, Brex, Carta, and AWS admin access and control inaccessible to Juries.ai or its agents, preventing Juries.ai from viewing, downloading, or otherwise accessing the information contained therein.

101. Mr. Sheu knowingly and intentionally converted all or parts of Juries.ai's property interests in its trade secret and confidential information, as well as its financial and services accounts, by restricting access by Juries.ai and continuing to access, use, or download the information himself.

102. As a result of Mr. Sheu's conduct alleged herein and alleged conversion, Juries.ai has been damaged in an amount to be proven at trial and is entitled to any and all orders and judgments necessary to compensate Juries.ai for Mr. Sheu's conversion of its property, but in any case no less than the fair market value of the misappropriated trade secrets and financial and services accounts.

**PRAYER FOR RELIEF**

Juries.ai respectfully requests that the Court enter a judgment against Mr. Sheu and prays for an award as follows:

1. The entry of judgment in favor of Juries.ai, and against Mr. Sheu, for each of the above claims.

2. Granting a temporary restraining order, preliminary injunction, and permanent injunction enjoining and restraining Mr. Sheu and all other persons from:

    a. accessing, using, or disclosing, for any purposes, Juries.ai's trade secret and confidential information;

    b. from using any trade secret and/or confidential information of Juries.ai to solicit business from any existing or prospective investors or customers of Juries.ai;

    c. from accessing, tampering with, purging, deleting, removing, concealing, spoliating, secreting, altering, or destroying any documents or information in any medium, whether in hard copy or contained in computing equipment, in Mr. Sheu's possession, custody, or control, in any form relating to this action;

    d. violating the CIIAA agreements between Mr. Sheu and Juries.ai;

    e. any other injunctive relief as is proper;

3. Granting an order requiring Mr. Sheu to:

    a. return all of Juries.ai's property and information, without first altering, destroying or otherwise disposing of any such property and information, including but not limited to all electronically-stored information and information obtained from Juries.ai's computer systems and accounts and to provide the user names and passwords used by Mr. Sheu to access any and all

        Juries.ai accounts;

    b. provide a detailed accounting to Juries.ai of such return;

    c. allow inspection Mr. Sheu's personal devices to verify compliance with the Court's order; and

    d. any other equitable relief as is proper;

4. Awarding damages as described in each of the above claims, in favor of Juries.ai and against Mr. Sheu in amounts to be determined at trial;

5. Awarding punitive damages in favor of Juries.ai and against Mr. Sheu in an amount to be determined at trial;

6. Awarding Juries.ai's pre-judgment and post-judgment interest, its attorneys' fees and costs, and other expenses incurred in this action;

7. For any such other further relief as this Court deems just and proper.

### JURY DEMAND

Juries.ai hereby demands a jury trial on all issues and claims so triable.

| | | |
|---|---|---|
| 1 | Dated: November 24, 2025 | LATHAM & WATKINS LLP |
| 2 | | /s/ Blake R. Davis |
| 3 | | BLAKE R. DAVIS, Bar No. 294360 |
| | | blake.davis@lw.com |
| 4 | | ALLISON HARMS, Bar No. 299214 |
| | | allison.harms@lw.com |
| 5 | | 505 Montgomery Street, Suite 2000 |
| | | San Francisco, CA 94111 |
| 6 | | Telephone:    (415) 391-0600 |
| 7 | | DREW W. ROBERTS, Bar No. 337164 |
| | | drew.roberts@lw.com |
| 8 | | 555 Eleventh Street, NW, Suite 1000 |
| | | Washington, DC 20004 |
| 9 | | Telephone:    (202) 637-2200 |
| 10 | | *Attorneys for Plaintiff Juries.ai, Inc.* |

COMPLAINT

1

CASE NO. 25-CV-10188