LATHAM & WATKINS LLP
BLAKE R. DAVIS, Bar No. 294360
blake.davis@lw.com
ALLISON HARMS, Bar No. 299214
allison.harms@lw.com
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 391-0600

DREW W. ROBERTS, Bar No. 337164
drew.roberts@lw.com
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Telephone: (202) 637-2200

*Attorneys for Plaintiff Juries.ai, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| JURIES.AI, INC.<br><br>*Plaintiff,*<br><br>v.<br><br>VINCENT SHEU<br><br>*Defendant.* | Case No. 25-CV-10188<br><br>**DECLARATION OF ELIZABETH GRABOWSKI PARIKH IN SUPPORT OF JURIES.AI'S APPLICATION FOR TEMPORARY RESTRAINING ORDER** |

I, Elizabeth Grabowski Parikh, declare that:

1. I have personal knowledge of the facts set forth in this declaration. If called as a witness, I could and would testify competently to them. I make this declaration pursuant to 28 U.S.C. § 1746.

2. I am the co-founder and Chief Executive Officer of Juries.ai, Inc. ("Juries.ai"), a C corporation organized under the laws of the State of Delaware with its principal place of business at 131 7th Avenue, #209, New York, NY.

3. I founded Juries.ai, originally as Juries.ai, LLC, in April 2025. In October 2025, Juries.ai, LLC was converted into Juries.ai, Inc. Pursuant to a Plan of Conversion, Juries.ai, LLC and Juries.ai, Inc. are deemed to be the same entity, and all assets and property (real, personal, and mixed) and all debts due to Juries.ai, LLC, as well as all other things and causes of action belonging to Juries.ai, LLC, remain vested in Juries.ai, Inc. and shall be the property of Juries.ai, Inc.

4. Juries.ai is an innovative pioneer in the field of artificial intelligence powered solutions for courtroom simulation. Juries.ai's artificial intelligence platform allows litigation teams to simulate courtroom decision-makers and battle-test their cases before entering the courtroom.

5. Juries.ai has made substantial investment to develop its AI-powered platform, including investment to develop proprietary knowledge and information. This proprietary knowledge and information includes Juries.ai's (1) comprehensive intake methodology for collecting data from real-world potential jurors, (2) actual data collected from the intake process of more than 80 potential jurors, (3) data-preprocessing methodologies that enable AI agents to use the collected data, (4) methodologies for validating the reliability of simulated jurors to real-world jury pool members, and (5) proprietary source code for simulating jurors and courtroom decision makers from this data.

6. Juries.ai has spent hundreds of thousands of dollars developing this confidential information. This confidential information derives considerable value from not being publicly known outside of Juries.ai, because it represents a significant investment of time and money that provides Juries.ai competitive advantages, among other things, from both a technological and

business perspective. Juries.ai has released its platform to limited, prospective business-to-business customers who have signed non-disclosure agreements with Juries.ai. Juries.ai anticipates that its innovative technology will gain Juries.ai an important first-mover advantage and tens of millions of dollars in revenues.

7. Juries.ai has also developed other proprietary and trade secret information, including information regarding research, development, new products, business and operational plans, budgets, unpublished financial statements and projections, costs, margins, discounts, credit terms, pricing, future plans and strategies, capital-raising plans, internal services, suppliers and supplier information, among others.

8. Because of this significant investment, Juries.ai protects this proprietary information as confidential and a trade secret. Juries.ai has taken reasonable and thorough steps to protect the secrecy of this information, including by: (1) requiring employees to execute Confidential Information and Inventions Assignment Agreements, which include confidentiality, non-disclosure, and return of property obligations; (2) requiring consultants and contractors to sign confidentiality and non-disclosure agreements; (3) requiring individuals to sign non-disclosure agreements and information release forms before being interviewed pursuant to Juries.ai's intake methodology; (4) using a company Google Workspace for storing confidential information, which includes a combination of built-in threat prevention, advanced security controls, and administrative visibility for data loss prevention; (5) using a private GitHub repository for source code development that allows permission assignments; (6) granting permission rights to the GitHub repository in a restrictive fashion; (7) maintaining high password and technical standards for access and security to the Google Workspace and GitHub repository; and (8) requiring that employees reaffirm their confidentiality, non-disclosure, and return of property obligations upon termination of employment through execution of a termination letter, which reiterates one's continuing confidentiality obligations and seeks affirmative representation that no company documents are retained.

9. I co-founded Juries.ai with Mr. Vincent Sheu ("Mr. Sheu"). During his time at Juries.ai, Mr. Sheu reported directly to me as CEO. Mr. Sheu was responsible for providing

technical input and overseeing development of Juries.ai's product development.

10. Because of Mr. Sheu's role as co-founder, he had access to all of Juries.ai's source code and document repositories, as well as administrative control over several systems owned by Juries.ai. For example, Mr. Sheu was the super administrator of Juries.ai's Google Workspace, JustWorks account, the system Juries.ai uses for company payroll services, Brex account, the digital banking system in which Juries.ai stored significant funds in excess of $400,000, and Carta account, which Juries.ai uses for capitalization table and employee equity management. Mr. Sheu also controlled an Amazon Web Services ("AWS") account for Juries.ai, containing more than $190,000 worth of credits awarded to Juries.ai.

11. While he was employed by Juries.ai, on April 3, 2025, Mr. Sheu signed an Employee Confidential Information and Inventions Assignment Agreement ("April CIIAA," attached hereto as Exhibit A) with Juries.ai LLC. On October 10, 2025, Mr. Sheu also signed a substantively identical Employee Confidential Information and Inventions Assignment Agreement with Juries.ai, Inc. ("October CIIAA," attached hereto as Exhibit B) (collectively, the April CIIAA and October CIIAA are the "Confidentiality Agreements").

12. The Confidentiality Agreements provide that Mr. Sheu "will hold in confidence and will not disclose, use, lecture upon, or publish any Confidential Information, except as required in connection with my work for Company." October CIIAA § 1.1; *see also* April CIIAA § 1. Further, the Confidentiality Agreements required Mr. Sheu to "deliver to Company any and all materials, together with all copies thereof, containing or disclosing any Company Inventions, or Confidential Information." October CIIAA § 8; *see also* April CIIAA § 7. If Mr. Sheu were to leave Juries.ai, the Confidentiality Agreements required Mr. Sheu to "provide Company any and all information needed to access any Company property or information returned or required to be returned pursuant to this paragraph, including without limitation any login, password, and account information; cooperate with Company in attending an exit interview; and complete and sign Company's termination statement if required to do so by Company." October CIIAA § 8; *see also* April CIIAA § 7. The Confidentiality Agreements also required Mr. Sheu "to provide Company access to [his] system as reasonably requested to verify that the necessary copying and/or deletion

is completed." October CIIAA § 8; *see also* April CIIAA § 7.

13. Further, the Confidentiality Agreements required that Mr. Sheu "assign to Employer [Juries.ai] all [his] right, title, and interest in and to any and all Company Inventions" and "assist" Juries.ai "to obtain and enforce United States and foreign Intellectual Property Rights … relating to Company Inventions[.]" October CIIAA §§ 2.4, 2.8; *see also* April CIIAA §§ 2.4, 2.8.

14. Additionally, under the Confidentiality Agreements, Mr. Sheu agreed that his employment was "at-will" and Juries.ai had the right to "to terminate my employment at any time, with or without cause or advance notice." October CIIAA § 12.5; April CIIAA § 10.5.

15. I partnered with Mr. Sheu to found Juries.ai because he had initially presented himself as an AI technology expert capable of building the Juries.ai product.

16. But over the course of his approximately six-month employment at Juries.ai, Mr. Sheu did not significantly contribute to the development of Juries.ai's product. He was unable to contribute technologically to the development of the Juries.ai product, instead relying on third-party contractors to contribute to Juries.ai's source code.

17. On October 31, 2025, on behalf of Juries.ai, I provided Mr. Sheu with written notice that his employment was being terminated, effective immediately. Mr. Sheu's employment was terminated according to the terms of the CIIAA and corporate bylaws. Upon termination, Juries.ai exercised its right to repurchase Mr. Sheu's Common Stock pursuant to the Stock Restriction Agreement between Mr. Sheu and the company dated October 13, 2025. On October 31, 2025, Juries.ai tendered payment to Mr. Sheu electronically via Zelle.

18. The October 31, 2025, termination letter provided to Mr. Sheu, (attached hereto as Exhibit C) outlined his separation from Juries.ai, and reminded Mr. Sheu of his continuing confidentiality, non-disclosure, and other obligations in the Confidentiality Agreements. The termination letter also requested that Mr. Sheu, within five days of October 31, 2025, return all of Juries.ai's documents and any proprietary or confidential information. Additionally, the Termination Letter requested that Mr. Sheu sign the termination letter acknowledging he received and understood it.

19. Since his termination, Mr. Sheu has not complied with his obligations under the Confidentiality Agreement. For example, Mr. Sheu has refused to sign the October 31, 2025, termination letter, despite his obligation to do so under Section 7 of the Confidentiality Agreements. Mr. Sheu has also not complied with any of the Confidentiality Agreements' confidentiality, non-disclosure, and return of property requirements. Mr. Sheu has also failed to return any Juries.ai documents or other Juries.ai property.

20. Instead, since his termination, Mr. Sheu has willfully and directly violated the terms of the Confidentiality Agreements, and has taken actions in bad faith designed to directly harm Juries.ai's continued operations.

21. For instance, Mr. Sheu is withholding administrative access (including withholding passwords and two-factor authentication and restricting Juries.ai's other accounts) to an AWS management account holding over $190,000 in credits awarded to Juries.ai; Juries.ai's Slack system, which employees use for internal and confidential communication; and Juries.ai's Carta administrative account, which Juries.ai uses for capitalization table and employee equity management. As of the filing of this document, Mr. Sheu has not returned access or login credentials for any of these accounts.

22. Additionally, Mr. Sheu restricted Juries.ai's access to its Brex digital banking account, hindering Juries.ai's day-to-day operations and access to its funds. Currently, Juries.ai is unable to access its Brex bank account, holding over $400,000 in Juries.ai's funds, due to Mr. Sheu's refusal to cooperate with his return of property obligations.

23. Further, following his termination, Mr. Sheu restricted Juries.ai's access to the JustWorks account that Juries.ai owns and uses for company payroll services, hindering Juries.ai's day-to-day operations and payroll systems. Despite Mr. Sheu's efforts, JustWorks' customer service was able to restore the Juries.ai account.

24. In addition to improperly restricting Juries.ai's access to necessary business accounts and services, Mr. Sheu also maintains unauthorized access to Juries.ai's Google Workspace account, which stores Juries.ai's trade secret and confidential information. Despite his termination, log-in logs have shown that Mr. Sheu has accessed the Google Workspace account

on over 80 instances since November 1, 2025. Juries.ai is unable to eliminate Mr. Sheu's access because he has a "super-administrator" account, which he has refused to provide the user name and password for.

25. It is also my understanding that Mr. Sheu has unauthorized access to Juries.ai's source code. During his employment Mr. Sheu had access to the private GitHub repository used by Juries.ai to manage its source code, development history, architectural decisions, and other proprietary materials. According to the Confidentiality Agreements, Mr. Sheu was to return all copies of Juries.ai's source code, along with any other confidential information, and provide reasonable access to his personal devices to confirm its deletion. After his termination, on October 31, 2025, Juries.ai was able to successfully terminate Mr. Sheu's access to its GitHub source code repository, which should restrict Mr. Sheu's access to *future* copies of Juries.ai's source code. But because Mr. Sheu used his personal devices for business operations, including viewing Juries.ai's source code, it is my understanding that Mr. Sheu continues to have access to local copies of Juries.ai's source code. It is not possible for Juries.ai to remotely restrict access to local copies of the repository, or any derivatives thereof, stored on Mr. Sheu's personal devices. Because any individual with access to a GitHub repository can clone or download it locally, and because Mr. Sheu viewed the code on his personal device, I have a well-founded basis to believe that Mr. Sheu still has possession of a copy of Juries.ai's code. To the best of my knowledge, since his termination, Mr. Sheu has not removed the local copies of the repository—i.e. all of Juries.ai's source code as of his termination on October 31, 2025—from his personal devices. Despite agreeing to do so in the Confidentiality Agreements, Mr. Sheu has not returned the source code or provided reasonable access to his personal devices for confirmation.

26. Additionally, Mr. Sheu also still possesses information regarding Juries.ai's business and operational plans, budgets, potential customer lists, pricing, quoting procedures, future plans and strategies, and capital-raising plans. Mr. Sheu has not returned any of this information to Juries.ai after his employment with Juries.ai.

27. Mr. Sheu's unauthorized possession of Juries.ai's confidential information and interference with its business pose significant risks. For example, I understand that Mr. Sheu has

communicated to potential investors that he may launch a competing company, providing substantially the same services and products as Juries.ai.

28. Mr. Sheu has also interfered with Juries.ai's filing of intellectual property applications. During Mr. Sheu's employment, Juries.ai worked with outside counsel to draft a complete patent application on inventions developed and owned by Juries.ai, naming six inventors, which was ready to file. In his Confidentiality Agreements, Mr. Sheu expressly agreed to assign intellectual property related to Juries.ai's inventions to Juries.ai, and assist Juries.ai in efforts to obtain or enforce intellectual property protections. Despite these obligations, I understand that after his termination, Mr. Sheu contacted Juries.ai's outside counsel and instructed them not to file the patent application. Because of this, outside counsel informed Juries.ai that it would be unable to file the application due to conflicts.

29. Despite Mr. Sheu's efforts to interfere with Juries.ai's day-to-day business, Juries.ai has attempted to protect its intellectual property and resolve its dispute with Mr. Sheu without intervention of the Court.

30. On November 7, 2025, one week after sending Mr. Sheu his Termination Notice, I had a telephone conference with Mr. Sheu in an attempt to resolve this dispute and to request Mr. Sheu comply with his continued obligations to the company. On that call, Mr. Sheu refused to address his termination and obligations. Instead, Mr. Sheu repeatedly suggested that Juries.ai should be dissolved. Mr. Sheu also attempted to solicit Juries.ai's intended business plan and roadmap to attracting additional venture funding.

31. On November 12, 2025, I again had a call with Mr. Sheu to request that he comply with his return of property obligations. During that call, Mr. Sheu reiterated his belief that Juries.ai should be shut down, without explanation. Mr. Sheu did not commit to return any of Juries.ai's property, accounts, or to comply with any of his confidentiality, non-disclosure, and return of property obligations.

32. I understand and believe that Mr. Sheu intends to misappropriate company IP to create, or assist in the creation, of a new, substantially identical business to Juries.ai. This is informed by my understanding that during the weeks following his termination, Mr. Sheu

approached multiple investors to pitch them on a substantially identical product and company to Juries.ai.

33. Because of Mr. Sheu's post-termination behavior, Juries.ai has a legitimate fear that Mr. Sheu will use, or already has used, and/or disclose Juries.ai's trade secret and confidential information to his benefit or the benefit of Juries.ai's competitors.

34. Because Mr. Sheu has rejected Juries.ai's efforts to resolve this issue, Juries.ai is forced to seek the Court's intervention.

35. The Exhibits attached hereto are true and correct copies of the documents they purport to be.

I declare under penalty of perjury that the foregoing is true and correct. Executed on November 24, 2025, in Sunnyvale, California.

By: */s/ Elizabeth Grabowski Parikh*
Elizabeth Grabowski Parikh

# E-FILING ATTESTATION

I, Blake R. Davis, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

*/s/ Blake R. Davis*
Blake R. Davis

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
DECL. ISO APPLICATION FOR TRO
CASE NO. 25-CV-10188
9