1

2

3                  UNITED STATES DISTRICT COURT

4                NORTHERN DISTRICT OF CALIFORNIA

5                      SAN JOSE DIVISION

6

7    JURIES.AI, INC.,                      Case No.  5:25-cv-10188-BLF

8                    Plaintiff,            **ORDER GRANTING MOTION FOR**
                                           **TEMPORARY RESTRAINING ORDER**
9            v.                            **AND ORDER TO SHOW CAUSE**

10   VINCENT SHEU,                         [Re:  ECF No. 2]

11                   Defendant.

12          Plaintiff Juries.AI, Inc. ("Juries.AI") filed the complaint in this action on November 24,

13   2025, asserting a federal trade secret claim against former co-founder and employee Defendant

14   Vincent Sheu under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836.  *See* Compl., ECF

15   No. 1.  Juries.AI also asserts state law claims for trade secret misappropriation, breach of contract,

16   computer fraud, and conversion.  *See id.*

17          Simultaneously with filing the complaint, Juries.AI filed an ex parte application seeking a

18   temporary restraining order ("TRO") prohibiting Mr. Sheu from retaining or using Juries.AI's

19   confidential information and requiring him to return all of Juries.AI's property and information in

20   his possession.  ECF No. 2 ("App.").  Juries.AI also seeks permission for expedited discovery.

21   The application for a TRO is GRANTED-IN-PART as set forth below.

22   **I.    BACKGROUND**

23          Juries.AI has submitted the declaration of its co-founder and Chief Executive Officer

24   Elizabeth G. Parikh, establishing the following facts.  ECF No. 2-2 ("Parikh Decl.").  Juries.AI is a

25   corporation organized under the laws of the State of Delaware with its principal place of business

26   in New York.  *Id.* ¶ 3.  Juries.AI is in the business of artificial intelligence ("AI") and specifically

27   deals in AI-powered solutions for courtroom simulation, with an AI platform that "allows

28   litigation teams to simulate courtroom decision-makers and battle-test their cases before entering

United States District Court
Northern District of California

the courtroom." *Id.* ¶ 4. Juries.AI has invested substantial time, energy, and resources in developing proprietary knowledge and information in connection with its AI platform, including (1) intake methodology for collecting data from real-world potential jurors, (2) data collected from the intake process of more than eighty potential jurors, (3) data-processing methodologies for the collection of potential juror data, (4) methodologies for validating this data, and (5) source code for simulating jurors and courtroom decisionmakers from this data. *Id.* ¶¶ 5–7. Juries.AI regards this proprietary information as confidential and as a trade secret and has accordingly established procedures to protect the secrecy of this information. *Id.* ¶ 8.

Ms. Parikh co-founded Juries.AI with Mr. Sheu in April 2025—during his time at Juries.AI, Mr. Sheu was responsible for providing technical input and overseeing Juries.AI's product development and reported directly to Ms. Parikh. *Id.* ¶ 9. Due to the nature of his role, Mr. Sheu had access to all of Juries.AI's source code and document repositories, as well as administrative control over several systems owned by Juries.AI; he also had control over a digital banking system (the "Brex Account") in which Juries.AI stored funds in excess of $400,000. *Id.* ¶ 10. He also controlled an Amazon Web Services account (the "AWS Account") for Juries.AI that contained more than $190,000 worth of credits. *Id.* On April 3, 2025, Mr. Sheu signed and executed an Employee Confidential Information and Inventions Assignment Agreement, ECF No. 2-3 ("Agreement" or "CIAA Agreement"),[1] in which he agreed that he "will hold in confidence and will not disclose, use, lecture upon, or publish any Confidential Information." Agreement § 1.1.

The Agreement further required Mr. Sheu to "deliver to [Juries.AI] any and all materials, together with all copies thereof, containing or disclosing any Company Inventions, or Confidential Information." Agreement § 8. If Mr. Sheu were to leave Juries.AI, the Agreement required Mr. Sheu to "provide Company any and all information needed to access any Company property

---

[1] Juries.AI was initially established as a limited liability company, and Mr. Sheu's agreement was with Juries.AI LLC. Parikh Decl. ¶ 3. Once Juries.AI LLC was converted into Juries AI, Inc., Mr. Sheu signed a "substantively identical" agreement with Juries.AI LLC. *Id.* ¶ 11; *see* ECF No. 2-4. This Order refers to the agreements interchangeably as "Agreement" but will cite to provisions as they appear in the latter agreement attached as Exhibit B to the Parikh Declaration and filed at ECF No. 2-4.

or information returned or required to be returned pursuant to this paragraph, including without limitation any login, password, and account information; cooperate with Company in attending an exit interview; and complete and sign Company's termination statement if required to do so by Company." *Id.* The Agreement also required Mr. Sheu "to provide Company access to [his] system as reasonably requested to verify that the necessary copying and/or deletion is completed." *Id.* The Parties also agreed that Mr. Sheu's employment was at-will. *Id.* § 12.5.

Mr. Sheu was terminated on October 31, 2025, for performance issues. ECF No. 2-5. The termination letter reminded Mr. Sheu of his continuing confidentiality, nondisclosure, and other obligations and requested that he return all of Juries.AI's documents and any proprietary or confidential information within five days. Mr. Sheu has since refused Juries.AI's request that he sign the termination letter to acknowledge he received and understood it. Parikh Decl. ¶ 19. Mr. Sheu has since violated the terms of the Agreement, including by restricting Juries.AI's access to the AWS Account, Brix Account, and other accounts, *id.* ¶¶ 21–23, and by maintaining unauthorized access to accounts that store Juries.AI's trade secrets and confidential information, *id.* ¶ 24. Ms. Parikh also represents that it is her understanding that Mr. Sheu has unauthorized access to Juries.AI's source code and continues to possess information regarding Juries.AI's business and operational plans. *Id.* ¶¶ 25–26.

The Parties had telephone conferences on November 7, 2025, and November 12, 2025, in which Mr. Sheu refused to comply with requests to address his obligations; he also stated his belief that Juries.AI should be terminated. *Id.* ¶¶ 30–31. Ms. Parikh believes that "Mr. Sheu intends to misappropriate company IP to create, or assist in the creation of a new, substantially identical business" to Juries.AI. *Id.* ¶ 32.

## II.    LEGAL STANDARD

The Court may issue a TRO without notice to the adverse party only if: "(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1). In addition, this district's Civil Local Rules require that

1    a TRO application be accompanied by "[a] declaration by counsel certifying that notice has been

2    provided to the opposing party, or explaining why such notice could not be provided."  Civ.

3    L.R. 65-1(a)(5).

4        Courts use the same standard for issuing a temporary restraining order as that for issuing a

5    preliminary injunction.  *See Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017)

6    ("[T]he legal standards applicable to TROs and preliminary injunctions are 'substantially

7    identical.'" (quoting *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7

8    (9th Cir. 2001)).  An injunction is a matter of equitable discretion and is "an extraordinary remedy

9    that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter*

10   *v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008).  A plaintiff seeking

11   preliminary injunctive relief must establish "[1] that he is likely to succeed on the merits, [2] that

12   he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of

13   equities tips in his favor, and [4] that an injunction is in the public interest."  *Id.* at 20.

14       "[I]f a plaintiff can only show that there are 'serious questions going to the merits'—a

15   lesser showing than likelihood of success on the merits—then a preliminary injunction may still

16   issue if the 'balance of hardships tips *sharply* in the plaintiff's favor,' and the other two *Winter*

17   factors are satisfied."  *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014)

18   (alteration in original) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.,* 709 F.3d 1281, 1291

19   (9th Cir. 2013)).

20   **III.    DISCUSSION**

21       Juries.AI asks the Court to issue an order enjoining Mr. Sheu from (1) obtaining, retaining,

22   using, copying, disclosing, transmitting, disseminating, or making attempts thereof Juries.AI's

23   confidential information; (2) using Juries.AI's confidential information to solicit business,

24   (3) accessing or tampering with any document or information in any medium in his possession

25   relating to this action, and (4) violating his Agreement with Juries.AI, and requiring Mr. Sheu to

26   (5) return Juries.AI's information and property without alteration, (6) transfer two-factor

27   authentication to Ms. Parikh, and (7) execute any and all documents required to re-establish

28   Juries.AI's control of the Brex Account.  Juries.AI also requests that the Court require Mr. Sheu to

United States District Court
Northern District of California

4

United States District Court
Northern District of California

1  show cause why a preliminary injunction should not issue and allow expedited discovery.

2      The Court has no difficulty finding that Juries.AI has satisfied the requirements for

3  issuance of a TRO ex parte but concludes that it has not made a sufficient showing with respect to

4  its request for expedited discovery.  The Court therefore GRANTS-IN-PART the ex parte

5  application and will consider the request for expedited discovery at the December 4, 2025,

6  hearing.

7      **A.  Proof of Service**

8      Juries.AI may obtain a TRO without notice to Mr. Sheu only by presenting specific facts in

9  an affidavit or verified complaint showing that "immediate and irreparable injury, loss, or

10  damage" otherwise would result.  Fed. R. Civ. P. 65(b)(1).  The movant's attorney must certify in

11  writing the reasons why notice should not be required.  *See id.*; Civ. L.R. 65-1(a)(5).  Juries.AI has

12  satisfied these requirements.

13      The Parikh Declaration establishes that Mr. Sheu was granted access to Juries.AI's trade

14  secrets and other proprietary information in order to perform work in his capacity with the

15  company; that Mr. Sheu retains access to Juries.AI's trade secrets and proprietary information;

16  that Mr. Sheu is interfering with Juries.AI's access to its accounts; that Mr. Sheu attempting to use

17  Juries.AI's trade secrets and proprietary information for his own benefit; and that Mr. Sheu is still

18  in possession of Juries.AI's property.  The Parikh Declaration further establishes that Mr. Sheu's

19  post-termination behavior subjects Juries.AI to a threat of irreparable injury arising from

20  disclosure of confidential, proprietary information.

21      Juries.AI's counsel, Blake Davis, has submitted a declaration stating that notice of this ex

22  parte application was given in accordance with Local Rule 65-1 by sending Mr. Sheu a copy of the

23  complaint, application, and Parikh Declaration by email to his last known email address and

24  stating that Juries.AI will file a proof of service once service of all papers is complete.  ECF No. 2-

25  6 ¶ 2.  On this record, the Court is satisfied that issuance of a TRO without proof of service is

26  appropriate.

27      **B.  Analysis**

28          **1.  Likelihood of Success on the Merits**

United States District Court
Northern District of California

Beginning with likelihood of success on the merits, Juries.AI's application is based primarily on its claim for trade secret misappropriation under the DTSA.  To prevail on a DTSA claim, an aggrieved plaintiff must plead and prove three elements: (1) plaintiff owned a trade secret; (2) defendant acquired, disclosed, or used the protected secret through improper means; and (3) defendant caused damage to plaintiff." *Beatport v. SoundCloud*, No. 19-cv-00847-MRW, 2019 WL 6330680, at *1 (C.D. Cal. Apr. 11, 2019).  "Actual or threatened misappropriation may be enjoined."  *Farmers Ins. Exch. v. Steele Ins. Agency, Inc.*, No. 13-cv-00784-MCE, 2013 WL 2151553, at *9 (E.D. Cal. May 16, 2013).  "A 'trade secret' is information that (1) derives independent economic value, actual or potential, from not being generally known to, or readily ascertainable by other people who can obtain economic value from its disclosure or use and (2) is subject to reasonable efforts to maintain its secrecy."  *WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834, 845–46 (N.D. Cal. 2019) (citing 18 U.S.C. § 1839(3)).

Juries.AI has provided evidence in the form of the Parikh Declaration that the information that Mr. Sheu has acquired and refused to return includes virtually every tool that is required to reproduce the Juries.AI platform, including source code, individual juror data collection methodologies, interview results, business plans, pricing, and potential customers.  Parikh Decl. ¶¶ 5–7.  Such information is squarely within the ambit of the type of material covered by the DTSA's definition of trade secrets.  *See* 18 U.S.C. § 1893(3).  The Declaration further establishes that this information derives independent economic value from not being generally known or readily ascertainable through proper means because its platform has been limited to business-to-business customers through individual contracts and because Juries.AI has expended time, energy, and resources into its technology with the expectation of a first-mover advantage.  Parikh Decl. ¶ 6.  Finally, the Declaration shows that Juries.AI has taken reasonable measures to protect its trade secret and confidential information by storing its source code and database on password protected, encrypted, third-party file storage and sharing services.  *Id.* ¶ 8. These types of measures have routinely been held to be sufficient under the DTSA.  *See, e.g.*, *MAI Sys. Corp. v. Peak Comput., Inc.*, 991 F.2d 511, 521 (9th Cir. 1993).

The record suggests that Mr. Sheu has accessed and used Juries.AI's trade secrets in a

manner not authorized by Juries.AI by, among other things, using his administrative privileges to access Juries.AI's internal company databases post-termination and refusing to return Juries.AI's source code, individual juror data collection methodologies, interview results, business plans, pricing, potential customers, among other information he was given access to during his employment.  Parikh Decl. ¶¶ 20–26.  Mr. Sheu's actions pose a significant threat to Juries.AI's future, since disclosure of the trade secrets would destroy the value of Juries.AI's products and deprive it of opportunities to market them.  *See Apex.AI, Inc. v. Langmead*, No. 23-cv-02230-BLF, 2023 WL 3391962, at *3 (N.D. Cal. May 10, 2023).  In light of this strong showing of likelihood of success on its DTSA claim, the Court need not address likelihood of success on Juries.AI's state law claims.

### 2.  Irreparable Harm

Juries.AI also has established that it is likely to suffer irreparable harm if a TRO is not granted.  "[C]ourts in this district have 'presume[d] that Plaintiff will suffer irreparable harm if its proprietary information is misappropriated.'"  *Comet Techs. United States of Am. Inc. v. Beuerman*, No. 18-cv-01441-LHK, 2018 WL 1990226, at *5 (N.D. Cal. Mar. 15, 2018) (second alteration in original) (quoting *W. Directories, Inc. v. Golden Guide Directories, Inc.*, No. 09-cv-1625, 2009 WL 1625945, at *6 (N.D. Cal. June 8, 2009)).  Other evidence also suggests that Juries.AI is likely to suffer irreparable harm absent injunctive relief.  Here, Mr. Sheu has taken proprietary information relating to a new product that Juries.AI intends to bring to market, interfered with Juries.AI's access to accounts necessary for its day-to-day operations, and expressed his intention for Juries.AI to be terminated, indicating that Juries.AI risks, among other things, losing potential customers and sales due to his conduct.  *Eldorado Stone, LLC v. Renaissance Stone, Inc.*, No. 04-cv-02562-JM-LSP, 2005 WL 5517732, at *5 (S.D. Cal. May 31, 2005).

Juries.AI has made a strong showing on irreparable harm.

### 3.  Balance of Equities

Juries.AI argues that it has a strong interest in ensuring that there is no unauthorized retention, copying, disclosure, or use of its trade secrets and other confidential information."  App.

1   at 15.  The balance of equities favors Juries.AI because it appears that Mr. Sheu has

2   misappropriated Juries.AI's trade secrets and is attempting to market them for his own benefit.

3   Under these circumstances, Mr. Sheu does not appear to have any legitimate competing interest in

4   the trade secrets, and he "would not suffer hardship if the Court entered a narrowly tailored

5   injunction prohibiting [him] from employing unlawful means to compete against" Juries.AI.

6   *W. Directories*, 2009 WL 1625945, at *7.

7           **4.  Public Interest**

8           "[T]he public interest is served when defendant is asked to do no more than abide by trade

9   laws and the obligations of contractual agreements signed with her employer.  Public interest is

10  also served by enabling the protection of trade secrets."  *Henry Schein, Inc. v. Cook*,

11  191 F. Supp. 3d 1072, 1078 (N.D. Cal. 2016).  Courts in the Ninth Circuit regularly conclude that

12  narrowly tailored injunctions advance the public interest by "serv[ing] the policy of protecting

13  trade secrets while simultaneously allowing lawful competition."  *Pyro Spectaculars N., Inc.*

14  *v. Souza*, 861 F. Supp. 2d 1079, 1093 (E.D. Cal. 2012); *accord Bambu Franchising, LLC*

15  *v. Nguyen*, 537 F. Supp. 3d 1066, 1080 (N.D. Cal. 2021).

16          **C.  Security**

17          Federal Rule of Civil Procedure 65(c) provides that "[t]he court may issue a preliminary

18  injunction or a temporary restraining order only if the movant gives security in an amount that the

19  court considers proper to pay the costs and damages sustained by any party found to have been

20  wrongfully enjoined or restrained."  The Ninth Circuit has "recognized that Rule 65(c) invests the

21  district court 'with discretion as to the amount of security required, *if any*.'"  *Jorgensen*

22  *v. Cassidy*, 320 F.3d 906, 919 (9th Cir. 2003) (quoting *Barahona-Gomez v. Reno*, 167 F.3d 1228,

23  1237 (9th Cir. 1999)).  "The district court may dispense with the filing of a bond when it

24  concludes there is no realistic likelihood of harm to the defendant from enjoining his or her

25  conduct."  *Id.*

26          The Court finds that there is no realistic likelihood of harm to Mr. Sheu because a TRO

27  would simply enjoin him from disclosing or using information taken from Juries.AI.  *See Comet*,

28  2018 WL 1990226, at *6 ("[T]here is no likelihood of harm because the TRO would simply enjoin

United States District Court
Northern District of California

8

1   Defendant from doing something Defendant never had a right to do in the first place.").

2   Accordingly, the Court finds it appropriate to issue injunctive relief without requiring Juries.AI to

3   provide security.

4       **D.  Scope of Relief**

5         **1.  Injunctive Relief**

6       For the reasons discussed above, the Court is satisfied that Juries.AI is entitled to

7   prohibitory injunctive relief enjoining Mr. Sheu from using or disclosing Juries.AI's trade secrets

8   or confidential information.  The Court is also satisfied Juries.AI is entitled to prohibitory

9   injunctive relief enjoining Mr. Sheu from destroying evidence.

10      Juries.AI also seeks mandatory injunctive relief compelling Mr. Sheu to return all Juries.AI

11  trade secrets, confidential information, property, and data.  "In general, mandatory injunctions 'are

12  not granted unless extreme or very serious damage will result and are not issued in doubtful cases

13  or where the injury complained of is capable of compensation in damages.'"  *Marlyn*

14  *Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878 (9th Cir. 2009) (quoting

15  *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1980)).  Applying this standard, the

16  Ninth Circuit has explained that a plaintiff seeking a mandatory injunction must establish that "the

17  law and facts *clearly favor* her position, not simply that she is likely to succeed."  *Garcia*

18  *v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015).  The Court concludes that Juries.AI has cleared

19  that high threshold by alleging specific facts that, if true, clearly favor its position and establish

20  that it will suffer irreparable injury if Mr. Sheu is permitted to continue accessing and using its

21  property.  Accordingly, the more demanding standard for issuance of a mandatory injunction is

22  satisfied here.

23      The application for a TRO is GRANTED.

24        **2.  Expedited Discovery**

25      "Courts may order expedited discovery on a showing of good cause."  *WeRide*,

26  379 F. Supp. 3d at 854.  "Good cause may be found where the need for expedited discovery, in

27  consideration of the administration of justice, outweighs the prejudice to the responding party."

28  *Id.*  At this stage, the Court is not satisfied that Juries.AI's proposed discovery plan is realistic.

United States District Court
Northern District of California

9

1    Because this TRO is issued ex parte, the Court must hold a hearing within fourteen days of

2    issuance.  *See* Fed. R. Civ. P. 65(b)(2). There is simply no time for completion of any discovery

3    before the hearing.

4        The request for expedited discovery will be considered at the December 4, 2025, hearing.

5    **IV.    ORDER**

6        For the foregoing reasons, IT IS HEREBY ORDERED that Juries.AI's ex parte application

7    is GRANTED-IN-PART as follows:

8        (1) Mr. Sheu is immediately restrained and enjoined, until December 9, 2025:

9            a.    from obtaining, retaining, using, copying, disclosing, transmitting,

10                disseminating, or attempting to obtain, retain, use, disclose, transmit, or

11                disseminate, any trade secret and/or confidential information of Mr. Sheu or

12                obtained from Juries.AI's computer systems;

13            b.    from using any trade secret and/or confidential information of Juries.AI to

14                solicit business from any existing or prospective investors or customers of

15                Juries.AI;

16            c.    from accessing, tampering with, purging, deleting, removing, concealing,

17                spoliating, secreting, altering, or destroying any documents or information in

18                any medium, whether in hard copy or contained in computing equipment, in

19                Mr. Sheu's possession, custody, or control, in any form relating to this action.;

20                and

21            d.    from violating provisions of the CIIAA Agreement;

22        (2) Mr. Sheu is ORDERED to return all of Juries.AI's property and information within

23            48 hours of service of this Order, without first altering, destroying or otherwise

24            disposing of any such property and information; to transfer two-factor authentication to

25            Ms. Parikh, or otherwise disable two-factor authentication for log-in so that Ms. Parikh

26            may log-in to accounts without Mr. Sheu's participation; and to execute any and all

27            documents re-establish Juries.AI's control of its accounts.

28        (3) Juries.AI MAY serve Mr. Sheu by alternate service via email followed by Federal

United States District Court
Northern District of California

Express delivery to him personally.

(4) Juries.AI SHALL file proof of service by November 26, 2025.

(5) IT IS FURTHER ORDERED THAT Mr. Sheu shall appear before Honorable Judge Beth Labson Freeman, United States District Judge, in Courtroom 1 of the United States District Court, Northern District of California, located at 280 South 1st Street San Jose, CA 95113, on December 4, 2025, at 9:00 a.m. and show cause why a preliminary injunction with the same restrictions as the granted temporary restraining order should not issue during the pendency of this action.  Any response or opposition to this Order to Show Cause shall be filed by December 2, 2025, at 12:00 p.m.

(6) Juries.AI's request for expedited discovery will be considered at the December 4, 2025, hearing.

(7) This TRO SHALL be in effect until December 9, 2025, at 5:00 p.m. unless modified by the Court.

Dated:  November 25, 2025

_____
BETH LABSON FREEMAN
United States District Judge