BARBARA N. BARATH (State Bar No. 268146)
MARK L. HEJINIAN (State Bar No. 281417)
COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000
San Francisco, California 94104-5500
Telephone: 415.391.4800
Facsimile: 415.989.1663
Email:     ef-bnb@cpdb.com
           ef-mlh@cpdb.com

BIJAL V. VAKIL, Bar No. 192878
bijal.vakil@skadden.com
QUYEN L. TA, Bar No. 229956
quyen.ta@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, California 94301
Telephone: (650) 470-4500

Attorneys for Defendant
Vincent Sheu

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| JURIES.AI, INC.,<br><br>　　　　Plaintiff,<br><br>v.<br><br>VINCENT SHEU,<br><br>　　　　Defendant. | Case No. 5:25-CV-10188-BLF-VKD<br><br>**DECLARATION OF VINCENT SHEU**<br><br>Judge:　The Hon. Beth Labson Freeman<br>Date:　 December 4, 2025<br>Time:　 9:00 a.m.<br>Crtrm.:　1 |

I, Vincent Sheu declare that:

1. I am over 18 years of age and have personal knowledge of the facts set forth in this declaration. If called as a witness, I could and would testify competently to them. I make this declaration pursuant to 28 U.S.C. § 1746.

2. I understand that Juries.ai filed its complaint against me on November 24, 2025, and that the Court entered a Temporary Restraining Order on November 25, 2025. Juries.ai did

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

1 | not serve me with the Temporary Restraining Order until November 26, 2025 at 2:17 p.m.

2 | 3. My counsel and I have worked tirelessly over the Thanksgiving holiday to comply with the TRO. I understand that my counsel corresponded with Juries.ai's counsel by phone and email on a daily basis between November 26, 2025 and today. I personally got on the phone with Ms. Grabowski Parikh to assist her in setting up accounts so that I could transfer access to certain Juries.ai systems to her.

4. I understand that my counsel informed Juries.ai's counsel that I would agree to a permanent injunction reflecting the terms of the TRO. A true and correct copy of a draft permanent injunction to which I would agree is attached hereto as **Exhibit 1**. It deletes the term "retaining" from Section (1)(a) because the prohibition on "retaining" (if interpreted to require deleting documents) conflicts with Section (1)(c), which prohibits deletion. It also changes the word "Mr. Sheu" to "Juries.ai" in Section (1)(a) and deletes a period in Section 1(c) to correct typographical errors. The changes relative to the Court's TRO are shown in track changes.

5. I offered to delete all Juries.ai's confidential information from my personal devices in the presence of Juries.ai's counsel. A true and correct copy of the letter from my counsel making that offer is attached hereto as **Exhibit 2**. I also offered to engage a third-party vendor (at Juries.ai's expense) to make forensic images of my devices and work with Juries.ai to do any necessary inspection, as explained in the correspondence attached hereto as **Exhibit 3**. I have agreed to work with the vendor to give Juries.ai comfort that its trade secrets and confidential information have been returned and deleted.

6. Since this lawsuit was filed, my counsel has also begun discussions with Juries.ai's counsel to reach a global settlement and resolve the parties' mutual claims, including my counterclaims and indemnity claims.

  **A. April 2025 Formation of Juries.ai**

7. Elizabeth Grabowski Parikh and I founded Juries.ai, Inc. ("Juries.ai") in April 2025 as Juries.ai, LLC. We ran the company together and were its only two directors.

8. Ms. Grabowski Parikh served as the Chief Executive Officer of Juries.ai. I served as the Chief Technology Officer, Chief Financial Officer/Treasurer, and Secretary of the company

and I was the company's sole technical leader. I personally designed and built the Company's original proof of concept, and also designed and led the development of the company's initial product, including the juror and judge simulation and evaluation architecture/framework. I was responsible for all engineering, product development, and technical strategy.

9. I also handled the company's financial operations and corporate records. In the Company's early stages, I carried out most of the technical, operational, and administrative work necessary to launch and run the business, including maintaining the Company's file storage systems.

10. During my tenure at Juries.ai, Ms. Grabowski Parikh and I each held an equal share of the equity in the company comprising virtually all its outstanding shares, and each held nearly fifty percent of the voting shares. The remaining approximate 1.5% of shares were owned by Neo 4.0, L.P. and Neo 4.0a, L.P. Neo is a startup accelerator and venture capital fund.

11. On April 3, 2025, Ms. Grabowski Parikh and I executed the Limited Liability Company Operating Agreement of Juries.ai, LLC. A true and correct copy of the operating agreement is attached hereto as **Exhibit 4**.

### B. October 2025 Conversion of Juries.ai

12. In the fall of 2025, Juries.ai pursued its second seed funding round, and successfully signed a term sheet for a $4.5 million seed round with two co-lead investors, valuing the company at $25 million.

13. As part of that fund-raising round in October 2025, Juries.ai, LLC was converted into Juries.ai, Inc.

14. On October 13, 2025, I was re-affirmed in my role as a director and officer of Juries.ai, Inc. via two written consents. A true and correct copy of the Action By Written Consent Of Sole Incorporator Of Juries.ai, Inc. is attached hereto as **Exhibit 5**, by which I was re-appointed as a director. The Action By Unanimous Written Consent In Lieu Of The Organizational Meeting Of The Board Of Directors is attached hereto as **Exhibit 6**, by which I was re-appointed as Chief Financial Officer, Secretary, and Chief Technical Officer.

15. On October 13, 2025, I executed the bylaws of Juries.ai, Inc. as the company

Secretary. A true and correct copy of the bylaws are attached hereto as **Exhibit 7**. A new provision was added that effectively allowed Ms. Grabowski Parikh, as the CEO, to terminate my status as an officer without cause. I discussed this provision with one of Juries.AI's key investors who assuaged my concerns. It explained that, if Ms. Grabowski Parikh terminated me, that would torpedo the anticipated funding round.

16. On October 13, 2025, the Certificate of Incorporation for Juries.ai, Inc. was filed with the Delaware Secretary of State. A true and correct copy is attached hereto as **Exhibit 8**.

17. Juries.ai has provided no notice to me that any vote to remove me as a director of Juries.ai has occurred, or that I have been removed as a director of Juries.ai by any other means. As far as I am aware, I remain a director of Juries.ai.

C.     **October 31, 2025 Termination**

18. On October 31, 2025, on the eve of the company's second funding round, Ms. Grabowski Parikh sent me a termination notice and claimed to repurchase all of my common stock in the company.

19. I immediately contacted Juries.ai's corporate counsel, Cooley LLP, explaining that I was concerned that her actions may not be proper.

20. A true and correct copy of Ms. Grabowski Parikh's October 31, 2025 email and my subsequent correspondence with Cooley LLP is attached hereto as **Exhibit 9**.

21. I remain a stockholder in Juries.ai. There was a small tranche of fully vested FF Preferred shares that I was issued during the C-corp conversion that she could not repurchase.

22. By terminating me, Ms. Grabowski Parikh risked scuttling Juries.ai's funding round and destroying the company that she and I had worked so hard to build. Soon after Ms. Grabowski Parikh announced my termination, every single investor pulled out of Juries.ai's funding round.

23. As a director, I had a fiduciary obligation to investigate Ms. Grabowski Parikh's actions. I had a phone call with Cooley LLP on November 2, 2025 to put Juries.ai on notice of my plan to investigate her actions. I sent an email summarizing that call. A true and correct copy of the email is attached hereto as **Exhibit 10**.

24. In talking to Cooley LLP, I confirmed that I was reaching out in my capacity as a director of Juries.ai, and that I was not seeking or receiving legal advice from Cooley LLP on behalf of Juries.ai.

25. I reached out to the Stanford Law Entrepreneurship clinic and another attorney asking for assistance to help determine whether Ms. Grabowski Parikh had violated her duties and what actions I could take to protect myself and the company. After being suddenly ousted from Juries.ai and purportedly stripped of my equity, I cannot afford the legal fees associated with an additional deposition.

### D. Access to Juries.ai Accounts and Files

26. It is not true that "[I] restricted Juries.ai's access to many of accounts for its necessary online services." (Mot. at 6.) I had specifically asked Cooley LLP, on our phone call and in writing, that they let me know if anything I was doing was interfering with company operations. I was never told that there was any issue.

27. To the best of my knowledge, Juries.ai has been operational this entire time.

28. I did nothing to restrict Juries.ai access to its Brex account. To the contrary, I have not had access to my Brex login since at least November 5, 2025 (and possibly earlier).

29. I also did not "restrict[] Juries.ai from controlling its Amazon Web Services ('AWS') credits." (Mot. at 6.) Prior to my departure, I had already set up a "dev" account with system administrator access to the company's AWS instance and given access to the dev account to Ms. Grabowski Parikh and members of the technical team.

30. It is true that I controlled access to Juries.ai's Carta and Slack administrative accounts, but I never interfered with Juries.ai's internal communications or operations.

31. I also did not restrict Juries.ai's access to the JustWorks account that Juries.ai owns and uses for company payroll services, and never hindered Juries.ai's day-to-day operations and payroll systems. I granted Ms. Grabowski Parikh administrator permissions on JustWorks on November 3, 2025 (the first business day following Juries.ai's October 31, 2025 termination letter). My access to JustWorks was removed shortly thereafter.

32. I understand that Juries.ai claims its Google Workspace logs "show [I] unlawfully

access[ed] Juries.ai's confidential internal repositories where Juries.ai's proprietary information and know-how is stored in over 80 separate instances without authorization." (Mot. at 6-7.) That is not accurate.

33. A small subset of these events occurred because—as I explained to the company's counsel—in my capacity as a director of Juries.ai, I was preserving company records to investigate Ms. Grabowski Parikh's actions.

34. The vast majority of the approximately 80+ access events were not the result of me intentionally logging in to review any Juries.ai materials. Both my phone and my personal computer had previously been linked to the vincent@juries.ai Google Workspace account: the account had been added to my browser, mail, and calendar applications, and I had active, persistent login sessions in dozens of browser windows. As a result, whenever I powered on my devices, my devices reconnected to the internet, or my devices tried to sync automatically, Google and Apple's systems automatically attempted to refresh those sessions and sync email, drive, and calendar data. Even the act of moving to an existing open browser window for the sole purpose of closing/ending that session causes the browser to attempt to refresh the session if the browser thinks the session is stale. These automatic refreshes likely appear in audit logs as access and fetch (i.e. download) events by my devices, even though I took no deliberate action and did not intentionally view or use any company information. Thus, to the best of my knowledge, the overwhelming majority of the "80 separate instances" that Juries.ai refers to were passive, system-generated background syncs. They did not involve me manually accessing or using any Juries.ai information.

35. I have never had any intention of founding a new company to directly compete with Juries.ai, misappropriating or exploiting its trade secrets, interfering with Juries.ai's business or investor relationships, or unlawfully retaining Juries.ai's property. I have not used any information from Juries.ai's repositories to harm the company. I have never improperly used any Juries.ai confidential information or disclosed any Juries.ai confidential information to any third parties, and I have no intention of doing so. Nor have I have ever told investors, Juries.ai, or Ms. Grabowski Parikh that I planned to start a competing company (e.g. a potential "Juries.ai 2.0").

### E. Exit Package Negotiations

36. On November 3, 2025, Ms. Grabowski Parikh and I began discussions facilitated by Cooley LLP regarding my exit package.

37. On November 7, 2025, Ms. Grabowski Parikh and I had an initial call to discuss my exit package along with Cooley LLP. Ms. Grabowski Parikh outlined two buyout proposals: one all cash, and one that included equity and cash. She committed to putting together a written proposal within the next week.

38. On the November 7, 2025 call, I suggested that Juries.ai should be dissolved. I expressed concern that the company had no future and was not fundable as a result of Ms. Grabowski Parikh's actions, and asked Ms. Grabowski Parikh what she thought it would take to make the company fundable again. I explained that a shutdown path may be best since buying me out as Ms. Grabowski Parikh was proposing could adversely affect the Juries.ai cap table; if the company shut down, we would be able to start fresh and avoid investor concerns about our respective new companies' viability.

39. On November 9, 2025, Ms. Grabowski Parikh sent a written buyout proposal as promised.

40. On November 12, 2025, we had a follow-up call to discuss my exit package. I requested that the proposal be revised to be cash-based because Ms. Grabowski Parikh's actions had negatively impacted the value of the company's equity.

41. On November 19, 2025, Ms. Grabowski Parikh asked to defer the scheduled call saying she had not had time to put together the other package yet ("I haven't had time to scope what a cash-based settlement should look like, so it would be best to defer today's call. Same time next week?"). I responded that I was still open to reviewing proposals. We agreed to reschedule the call for November 24, 2025.

42. On November 24, 2025 at 11:27am PT, the morning of the scheduled follow-up call regarding my exit package, Ms. Grabowski Parikh canceled the call again. I reiterated my willingness to consider any proposal she was willing to put forth. A true and correct copy of the email chain memorializing the calls, settlement offer, and cancellation is attached hereto as

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

**Exhibit 11**.

### F. My Personal Devices

43. My personal devices and servers contain my private information unrelated to this case.

44. More importantly, however, my personal devices and servers contain privileged documents belonging to third parties. I currently serve as in-house general counsel for one company and a fractional general counsel for multiple other companies. My devices and servers contain privileged documents in connection with my role as counsel for those companies that I am obligated to protect under California's Rules of Professional Responsibility and the California Business and Professions Code.

45. I understand that my counsel explained this fact to Juries.ai's counsel and they initially insisted that I provide unfettered access to my personal devices in violation of my ethical obligation but as of the evening of December 2, 2025, my counsel and Juries.ai's have reached an agreement in principle regarding a forensic protocol in which a third party vendor will appropriately tailor the imaging and/or inspection of my personal devices. A true and correct copy of the correspondence showing that counsel have agreed in principle to engage a third party vendor for this purpose is attached here to as **Exhibit 12.**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on December 3, 2025, in San Francisco, California.

By: _____
Vincent Sheu